# Porter v. The State.

## Indictment for Murder.

1. *Insanity as a defense to murder; admissibility of evidence as to defendant's conduct when he was drinking.*—On a trial under an indictment for murder, where, in addition to the plea of not guilty, the defendant interposed the statutory plea of "not guilty by reason of insanity," on the cross-examination of one of defendant's witnesses, by whom it was attempted to show

[Porter v. The State.]

a state of facts from which it might be inferred that the defendant was insane at the time of the killing, and who had testified that he had seen the defendant when he was under the influence of whiskey and that he appeared to have been drinking a short time before the killing, it is competent for the State to ask such witness if he noticed "any difference in defendant's conduct when he was sober and when he was drinking?"

2. *Same; admissibility of evidence.*—In such a case, where a witness testified that a short time before the killing he moved the defendant's wife from where she was living with the defendant, to another place, the further statement of the witness, in answer to a question propounded by the defendant, that he so moved the defendant's wife "because she was afraid of the defendant because he was crazy," is mere hearsay evidence and inadmissible.

3. *Homicide; insanity; competency of non-expert witness, as to defendant's sanity.*—On a trial under an indictment for murder, where the defendant pleads "not guilty by reason of insanity," a witness for the State who testified to facts showing that he had known the defendant for a number of years and had associated with him continuously, having had conversations with him and having occasion to observe his conduct, is competent to testify as to his opinion as to the sanity of the defendant.

4. *Same; competency of expert testimony.*—In such a case, a physician who has practiced for a number of years and has treated insane patients, and who as the county physician, had carefully examined the defendant while in jail after the commission of the homicide, and had talked with him on several occasions, is competent to give his opinion as to the defendant's sanity.

5. *Insanity as a defense to murder; charge of court to jury.*—On a trial under an indictment for murder, where the defendant pleads not guilty and the statutory plea of "not guilty by reason of insanity," and there is evidence introduced *pro* and *con* as to the defendant's sanity, a charge requested by defendant is misleading and properly refused which instructs the jury that "an unsound mind cannot form a criminal intent, and as crime includes both act and intent, an indispensable ingredient is wanting when the mind of the perpetrator is diseased to that degree which is by law pronounced insanity."

6. *Same: same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that "If the jury believe from all the evidence that the defendant was insane at the time of the alleged crime, and that said alleged crime was the product

or offspring solely of said mental disease, then they should find the defendant not guilty."

7. *Same; same; reasonable doubt.*—In such a case, a charge is erroneous and properly refused which instructs the jury that if they, "upon considering all the testimony, have a reasonable doubt of defendant's guilt, arising out of any part of the evidence, they should find him not guilty."

8. *Same; same.*—In such a case, a charge is erroneous, as misplacing the burden of proof, and properly refused, which instructs the jury that "In order to sustain the defense of insanity, it is not necessary that the insanity of the accused be established by a preponderance of evidence; but if from all the evidence the jury entertain a reasonable doubt as to the sanity of the accused, they should find him not guilty under the plea of insanity."

9. *Same; same.*—In such a case, a charge is misleading and properly refused which instructs the jury that "If any individual juror, after considering all the evidence in the case, is satisfied that the defendant was insane at the time he committed the homicide, the jury cannot convict the defendant."

10. *Same; same.*—In such a case, a charge is misleading and properly refused which instructs the jury that "after consideration of all the evidence in the case, if they believe that at the time of the homicide the defendant was insane, even though it had been caused or superinduced by excessive drunkenness, then the defendant would not be responsible for his acts and should be acquitted under his plea of insanity."

11. *Charge in criminal case; when invasive of the province of the jury.*—In the trial of a criminal case, a charge is properly refused as invading the province of the jury which instructs them that "It is a well settled rule of law that if there be two reasonable constructions which can be given to facts proven, one favorable and the other unfavorable to a party charged with crime, it is the duty of the jury to give that which is favorable rather than that which is unfavorable to the accused party."

APPEAL from the Circuit Court of Russell.

Tried before the Hon. A. A. EVANS.

The appellant in this case, Uriah Porter, was indicted and tried for the murder of Joseph Fincher, was convicted of murder in the first degree, and sentenced to the penitentiary for life.

The defendant pleaded not guilty, and the statutory plea of not guilty by reason of insanity. As stated in

the opinion, there was no conflict in the evidence as to the killing of the deceased by the defendant; the evidence showing that the defendant rode up to within fifteen feet of the storehouse of Joseph Fincher, and that upon Fincher coming to the doorway of the storehouse, the defendant shot him in the breast with a double barrel shot gun, killing him instantly. There were many witnesses introduced for the defendant, whose testimony tended to show that the defendant, at the time of the homicide, was insane. In rebuttal to this testimony the State introduced several witnesses whose testimony tended to show that the defendant, at the time of the killing, was sane.

R. P. Baldwin, a witness for the defendant, testified that he lived about a mile and a half from where the defendant lived at the time of the killing, and had known the defendant for twenty years, was somewhat intimate with him; that he saw the defendant two or three days before the killing, and the defendant talked unreasonably about the value of a horse and dog which he owned; and that he thought the defendant was insane at the time of the killing; that the last time he saw the defendant before the killing was about an hour and a half before the killing. On cross-examination this witness testified that when he last saw the defendant before the killing he appeared to be very much under the influence of whiskey; that the defendant had a quart and a half of whiskey with him at the time, and that he had seen the defendant under the influence of whiskey. Thereupon the solicitor for the State asked the witness the following question: "Did you notice any difference in defendant's conduct when he was sober and when he was drunk?" The defendant objected to this question on the ground that it called for illegal, irrelevant and incompetent evidence, and because it put the defendant's character in issue. The court overruled the objection, and to this ruling the defendant duly excepted. The witness answered: "In his opinion, when the defendant was drinking, he was easily insulted and would try to raise a fuss with his best friend. When not under the influence of whiskey, he was a very social kind of a fellow." The

defendant moved to exclude this answer of the witness from the jury, upon the same grounds, and duly excepted to the court overruling his motion.

Aaron Tharp, a witness for the State, testified that he had known the defendant for fifteen or eighteen years intimately; that he had talked with the defendant a short time before the killing, and that in the witness's opinion, the defendant was insane at the time of the homicide; that some time before the killing the witness moved Mrs. Porter, the wife of the defendant, from the defendant's house to Crawford. Thereupon the defendant asked the witness the following question: "Why did you move Mrs. Porter?" Upon the witness answering, "Because she was afraid to live with Porter because he was crazy," the State objected to the answer, and moved to exclude the same, upon the ground that it was illegal, irrelevant and incompetent and hearsay evidence. The court sustained the objection, excluded the answer, and to this ruling the defendant duly excepted.

Monroe Fuller, a witness for the State, testified that he had known the defendant for ten or twelve years; had been to school with him, that since they were in school, witness had seen him as often as two or three times a week; had lived in the neighborhood with him, associated with him continuously, conversed with him and hunted with him frequently. The State then asked the witness the following question: "Was he, in your opinion, sane or insane?" The defendant objected to the question, because it called for illegal, incompetent and irrelevant evidence and for the opinion of the witness. The court overruled the objection and the defendant duly excepted. Upon the witness answering that in his opinion the defendant was sane, the defendant moved to exclude the answer of the witness upon the same grounds and duly excepted to the court overruling his motion.

The State introduced Dr. W. B. Prather as a witness, who testified that he was a regularly licensed and practicing physician, and had been for thirty years; that he had treated insane patients, and was county physician for Russell county while the defendant was in jail, and that shortly after the killing of Fincher by the defendant, and while the defendant was in jail, he carefully

examined the defendant on two separate occasions with reference to his mental condition, and saw and conversed with the defendant several times while he was incarcerated. The State then asked the witness the following question: "Whether or not, in his opinion, the defendant was sane or insane at the time the witness examined him?" The defendant objected to this question, because it called for irrelevant, incompetent and illegal evidence. The court overruled the objection and the defendant duly excepted. Upon the witness answering that in his opinion the defendant was sane, the defendant moved to exclude the answer upon the same grounds, and duly excepted to the court overruling his motion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (2.) "The court charges the jury that an unsound mind can not form a criminal intent, and as crime includes both act and intent, an indispensable ingredient is wanting when the mind of the perpetrator is diseased to that degree which is by law pronounced insanity." (4.) "The court charges the jury that if the jury, upon considering all the testimony, have a reasonable doubt of the defendant's guilt, arising out of any part of the evidence, they should find him not guilty." (5.) "The court charges the jury that in order to sustain the defense of insanity it is not necessary that the insanity of the accused be established by a preponderance of evidence; but if from all the evidence the jury entertain a reasonable doubt as to the sanity of the accused, they should find him not guilty under the plea of insanity." (11.) "The court charges the jury that it is a well settled rule of law that if there be two reasonable constructions which can be given to facts proven, one favorable and the other unfavorable to a party charged with crime, it is the duty of the jury to give that which is favorable rather than that which is unfavorable to the accused party." (15.) "The court charges the jury that if any individual juror, after considering all the evidence in the case, is satisfied that the defendant was insane at the time he committed

the homicide, the jury can not convict the defendant."
(16.) "The court charges the jury that after a consider-
ation of all the evidence in the case, if they believe that
at the time of the homicide the defendant was insane,
even though it had been caused or superinduced by ex-
cessive drunkenness, then the defendant would not be
responsible for his acts, and should be acquitted under
his plea of insanity." (20.) "If the jury believe from
all the evidence that the defendant was insane at the
time of the alleged crime, and that the said alleged crime
was the product or offspring solely of said mental dis-
ease, then they should find the defendant not guilty."

BARNES & DUKE, for appellant.—The charges request-
ed by the defendant asserted correct propositions of law,
and should have been given.—*Boswell v. State,* 63 Ala.
307; *Hurd v. State,* 94 Ala. 100; *Ford v. State,* 71 Ala,
385; *Martin v. State,* 119 Ala. 1; *Parson v. State,* 61
Ala. 577.

MASSEY WILSON, Attorney-General, for the State.
The testimony of the witness Baldwin brought out by
the State to which the defendant objected, was properly
admitted, under any phase of the case. If the defendant
was drunk and not insane at the time of the commission
of the offense, the State had the right to show that fact;
for in that event the defendant would be guilty of some
degree of homicide.—*Whitten v. State,* 115 Ala. 72.

The statement of the witness Tharp as to what another
witness had stated, which was excluded on the objection
of the State, was hearsay, besides calling for the secret
motive or purpose of the third person.—*Jackson v.
State,* 106 Ala. 12, 16.

The witnesses Fuller and Prather were properly per-
mitted to give their opinions as to the sanity of the de-
fendant.—*Burney v. Torrey,* 100 Ala. 157, 173; *Ragland
v. State,* 125 Ala. 12.

The charges requested by the defendant and refused
by the court were erroneous and misleading and invasive
of the province of the jury.—*Howard v. State,* 108 Ala.
57; *Monroe v. State,* 134 Ala. 1; *Maxwell v. State,* 89 Ala.

150; *Fonville v. State,* 91 Ala. 39; *Cleveland v. State,* 86 Ala. 1.

TYSON, J.—The conviction was for murder in the first degree upon an indictment charging this offense, to which pleas of "not guilty" and "not guilty by reason of insanity" were interposed. There was practically no conflict in the evidence relative to the killing by defendant. The matter of dispute was as to the condition of defendant's mind at the time of the homicide—whether sane or insane.

Several exceptions were reserved during the trial to the admission and exclusion of testimony which are, however, not insisted upon in brief of counsel for appellant. But we will review them. The first of these is based upon the action of the court in permitting the State on cross-examination to ask witness Baldwin, by whom the defendant attempted to show a state of facts from which his insanity at the time of the commission of the homicide might be inferred, "Did you notice any difference in defendant's conduct when he was sober and when he was drinking?" In view of this and the further testimony tending to show that defendant was drinking on the occasion of the killing, the question was not objectionable and the answer thereto was properly allowed.

The statement of the witness Tharp, excluded by the court on the objection of the State, was clearly objectionable on account of being hearsay, if for no other reason.

There was no error in allowing witnesses Fuller and Prather to give their opinions as to the sanity of the defendant.—*Burney v. Torrey,* 100 Ala. 157, 173; *Ragland v. State,* 125 Ala. 12; *Parrish v. State,* 139 Ala. 16.

This brings us to a consideration of the written charges refused to defendant. Charge 2 is an extract from the opinion in *Boswell v. State,* 63 Ala. 307, 316. The first proposition asserted in it that "an unsound mind cannot form a criminal intent" is clearly misleading if not wholly incorrect. The mind may in a sense be said to be unsound where its possessor is suffering

from delusions, hallucinations and illusions, and yet he may be held responsible for a criminal act where the intent is an essential ingredient of the offense, if these things are not the products of a diseased brain.—*Gunter v. State,* 83 Ala. 109. Nor, in our opinion, does the other portion of the charge relieve it of its misleading tendency, when applied to the evidence in the case.

Bearing in mind the issues presented by the two pleas, it is clear that charges 4 and 20, under the principle declared in *Maxwell v. State,* (89 Ala. 150, 165), were properly refused.

Charge 5 misplaced the burden of proof. This conclusion is fully sustained in many of our cases which might be cited. But this is unnecessary, since the statute definitely and with precision imposes the burden of proving irresponsibility upon the accused.—§ 4938 of Criminal Code.

Charge 11 invaded the province of the jury.—*Fonville v. State,* 91 Ala. 43.

Charges 15 and 16 were also misleading. It was open to the jury to find, under the evidence, that the species of insanity or mental unsoundness, if it existed at all, with which the defendant was afflicted, was a temporary aberration which sometimes accompanies or follows intoxication and is often accompanied by delusions, hallucinations and illusions. This is not such insanity as confers legal irresponsibility.

Insanity to relieve from criminal responsibility must be "caused by or result from *disease or lesion of the brain."*—*Gunter v. State, supra.*

Furthermore, if defendant was afflicted with a disease of the brain which rendered him insane he may have known it was wrong to take the life of the deceased, and, under the evidence, it was open to the jury to so find. If he had this knowledge, in order to relieve him of criminal responsibility two conditions must concur: "(1.) If, by reason of the duress of such mental disease, he had so far lost the *power to choose* between the right and wrong, and to avoid doing the act in question, as that his free agency was at the time destroyed. (2.) And if, at the same time, the alleged crime was so connected

with such mental disease, in relation of cause and effect, as to have been the product of it *solely.*"—*Parsons v. State*, 81 Ala. 596-7.

Affirmed.