188 So. 388

## WHITE v. STATE.

### 4 Div. 46.

Supreme Court of Alabama.

April 27, 1939.

Yarbrough & Beck, of Enterprise, for appellant.

Thos. S. Lawson, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

**BROWN, Justice.**

The appellant was convicted of the offense of "forcibly ravishing Elizabeth Liger," a white woman, and was sentenced to suffer death by electrocution.

The appellant is of the negro race and the evidence offered by the State goes to show that said Elizabeth Liger is a paralytic, twenty years of age, with the mental development of a child from eight to twelve years, and obsessed with a mania to have her fortune told. That appellant, a day or so before the commission of the alleged offense, came to Troy, procured a room at the home of Mary Etta Gray, also of negro race, fitted the room up for an office where he held himself out as a fortune teller. That with the aid and connivance of said Mary Etta Gray, appellant allured his alleged victim into said room and forcibly ravished her.

The appellant's testimony was a total disavowal of the alleged crime, but shows that Miss Liger visited his alleged office on two or more occasions, and paid him money to answer questions, and subsequently to "give her a full reading," as he termed it.

■ The evidence presented a case for the jury on all the elements of the alleged offense, including the mental capacity of the alleged victim to consent to sexual intercourse.

■ The State's witness, Miss Liger, testified fully both on her examination in chief and on cross-examination to the details of the alleged occurrence, and dealings with the appellant in said room, and the court did not err in sustaining the solicitor's objections to the question asked by defendant's counsel on cross-examination: "I will ask you again if this isn't a fact that this negro was polite and courteous to you all the time that you were there?" The question indicates on its face that it is a mere repetition and it called for a conclusion which it was the province of the jury to draw.

The witness, Miss Liger, on her examination in chief, after detailing the circumstances occurring while she was in the room with the defendant, without objection to the question, testified: "I started home then. I saw Mary Etta and her girl in the house when I started. Mary Etta was in the kitchen, I think, fixing dinner. I told her about what he was doing to me and she said he was as good as gold. She said 'He wasn't going to hurt you, that he was as good as gold.'"

■■ This testimony was properly admitted as tending to show complaint, and moreover, was of the res gestæ of the main fact—the alleged rape. Griffin v. State, 76 Ala. 29; Mickle v. State, 226 Ala. 616, 148 So. 319.

On cross-examination of the witness, the defendant brought out the following details of the conversation: "I didn't talk to anybody but Mary Etta. I just told her that he got on top of me and told her what he done to me. I told her that he had just told me I was going to have a husband and children and I was going to get a husband before the fourth of July, but I don't remember what else I told her."

In response to the solicitor's question, on redirect examination: "Now what else, if anything, did Mary Etta say to you on Tuesday evening just as you were leaving there?" The witness testified: "She told me not to tell anybody. She said if I did she was going to kill me."

■ This was permissible after the defendant had brought out the details of the complaint. Griffin v. State, supra.

The evidence shows that the medical witnesses, Doctors Sanders, Bowdoin and Stewart, had been engaged in the active general practice of medicine for several years, and had more or less experience in diagnosing and treating mental diseases; that they were personally acquainted with the alleged victim and had frequent opportunities to observe her physical and mental condition, and Dr. Sanders had participated with Dr. Stewart in making a physical examination.

■ Such medical witnesses, as has been repeatedly held, were competent to give their professional opinion as to the physical condition and mental development of the subject of their testimony without detailing to the jury all that they had observed. Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A.L.R. 840; Ex parte State ex rel. Davis, Atty.

General, Pitts v. State, 210 Ala. 662, 99 So. 65; Myers et al. v. State, 84 Ala. 11, 4 So. 291; Thaggard v. Vafes, 218 Ala. 609, 119 So. 647; Mitchell v. State, 58 Ala. 417; Rhodes v. State, 232 Ala. 509, 168 So. 869.

The defendant's objections going to this phase of the testimony were without merit and properly overruled.

 It was permissible for the State to adduce the testimony of the lay witnesses, Scarbrough and Ammons, who personally knew and had had long association with the alleged victim of the crime, giving the facts going to show her idiosyncrasies and obsessions in respect to fortune tellers and having her fortune told. Dominick v. Randolph, 124 Ala. 557, 27 So. 481; Parrish v. State, 139 Ala. 16, 36 So. 1012.

This, as the evidence tends to show, was the lure held out by the defendant and his accomplice to inveigle the victim into the defendant's net.

The court did not err in allowing the witness Hanson to testify that having seen Miss Liger as she passed his house going from the scene of the alleged crime to her home, "yes it was my judgment she was crying." Mayberry v. State, 107 Ala. 64, 18 So. 219.

It was also permissible for the solicitor on cross-examination to ask the defendant's witness, Carrie Louise Gray, the question: "Your mother is also under indictment under this same transaction?" as tending to show interest and bias.

Charges, 4, 9, 10, 11, 12, 15 and A were properly refused. While charge 4 was expressly approved by this court in McQuirk v. State, 84 Ala. 435, 4 So. 775, 5 Am.St.Rep. 381, there is in this case a question of fact which, under the evidence, it was the province of the jury to determine—whether or not the alleged victim was of such low order of mental development as to be incapable of consenting— a question not presented in the McQuirk case.

Charge 8 was properly refused. It imposed on the State the burden of showing "that the prosecutrix in this case was an idiot or so insane *as to be absolutely unconscious of what she was doing,*" as essential to the inability to consent. This imposed on the State too great a burden. Charge C was invasive of the province of the jury, and was properly refused.

Under the evidence the case was one for jury decision, and after full consideration we find the record of the defendant's trial and conviction free from error. The judgment of the circuit court is affirmed.

The date fixed by the circuit court for the execution of the sentence of the law having expired, pending appeal, it is ordered that Friday the 9th day of June, 1939, be and the same is fixed by this court for the execution of the sentence of the law, as by statute in such cases made and provided.

Affirmed.

All Justices concur.