11 So.2d 844

### CANTY v. STATE.

3 Div. 388.

Supreme Court of Alabama.

Jan. 14, 1943.

Rehearing Denied Feb. 25, 1943.

Ralph Ghent, of Montgomery, for appellant.

Wm. N. McQueen, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

BROWN, Justice.

The question of the guilt or innocence of the defendant, appellant here, has been submitted to and considered by three separate juries, each returning a verdict of murder in the first degree, the first fixing his punishment at death, affirmed here, but reversed by the United States Supreme Court, without opinion, with a mere citation of Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716, memoranda, Canty v. State of Alabama, 309 U. S. 629, 60 S.Ct. 612, 84 L.Ed. 988. See Canty v. State, 238 Ala. 384, 191 So. 260.

On the second trial the punishment was fixed at life imprisonment, and the judgment of conviction following the verdict of the jury was reversed here for erroneous instructions in respect to the defendant's defense of alibi. Canty v. State, 242 Ala. 589, 7 So.2d 292, 319.

The last trial resulted in a conviction for murder in the first degree and life imprisonment. The record before us is free of questions involved in Chamber's case, supra.

The major contention made on this appeal is that the evidence against the defendant is wholly circumstantial and is

insufficient to warrant his conviction. This contention cannot be sustained.

The evidence, given by an eyewitness, Miss Lillian Ward, and the Surgeon, Dr. Blue, who treated Eunice Ward, the person alleged to have been killed, after her removal to the hospital, shows without dispute that said Eunice Ward died as the result of a fractured skull, an injury caused by force or violence unlawfully used by a person of the negro race. And the circumstances detailed by said eyewitness, as was said on the second appeal, shows "a most atrocious crime, the brutal murder of the deceased, Eunice Ward, and the grievous wounding of her sister, while out gathering wild flowers in a wooded area near the Masonic Home, a few miles out of Montgomery. The victim was a white woman, the murderer a negro man. The question of identity of the perpetrator was the controverted issue in the case; was Dave Canty the Man? * * *."

The eyewitness Miss Ward, who was also assaulted by the same negro that assaulted and killed her sister, candidly testified she could not and would not attempt to "positively" identify Canty as the assailant, yet in her best judgment he was the man. Her testimony was corroborated by the three young men who lived at the Masonic Home, and who were returning from Bermuda Knoll's Golf Club. The substance of their testimony is that as they were passing near the scene of the attack they stopped and started up in the woods to gather wild flowers and met a negro face to face as he was running away from the place of the crime and he turned and ran in an opposite direction. Just before they saw the negro they heard a noise that sounded like "beating the bushes." These young men testified as witnesses and positively identified the defendant as the man they saw.

The testimony of Miss Ward is also corroborated by the testimony of the bus driver who picked the defendant up on the corner of 5th and Mulberry Streets six minutes after 5 o'clock soon after the time the crime was committed, to the effect that when Canty got on the bus he appeared to be excited. And by the testimony of Hattie Howard, from whom defendant sought advice under his assumed name of "Rudy Ray" to the effect that, "He told me he was in trouble, and I asked him about this thing that happened to these women. I ask him if he was connected with it, and he kind of hesitated a little bit. He hesitated a few minutes and said 'I will tell you the truth I did. I hit the big one first, and didn't do anything to the other one, and she tried to fight.' That's what he told me." This statement was shown to be voluntary.

And by the witness G. S. Howard who testified that he gave the defendant a pair of overalls and walked with him to the L. & N. Railroad, that he, defendant, said he was going to Mobile. By the letter which defendant wrote to Hattie Howard, and the fact that he was found and arrested at the place Hattie Howard told him to go in Mobile.

Said witness was also corroborated by the testimony of the dairyman, who testified in rebuttal, after Canty had denied that he had been in the vicinity of the crime since he returned from Chattanooga some eight days before, to the effect that he saw and recognized Canty near the place of the crime on the day before it was committed.

On the whole, as was said by us on the second appeal, "the issue was clearly one for the jury; and the motion to set aside the verdict because not supported by the evidence was properly overruled." Canty v. State, 242 Ala. 589, 591, 7 So.2d 292, 294.

■ The attack on the witness Lillian Ward was within the res gestae of the crime against her sister and was admissible as shedding light on the acts and motive of the perpetrator of said assault. Collins v. State, 138 Ala. 57, 34 So. 993; Campbell v. State, 133 Ala. 81, 31 So. 802, 91 Am.St.Rep. 17; Harris v. State, 96 Ala. 24, 11 So. 255; Grissett v. State, 241 Ala. 343, 2 So.2d 399; Peters v. State, 240 Ala. 531, 200 So. 404.

■ The proposed testimony of Joe Ash, as to what occurred between his son and the police, was clearly hearsay and was not relevant or material on the issue of identity, or for any purpose. Wesson v. State, 238 Ala. 399, 191 So. 249.

We have examined the other rulings of the court complained of and find nothing that invites further treatment.

It appears to us that the defendant had a fair and impartial trial, and the evidence is sufficient to sustain the judgment and sentence of the court.

Affirmed.

All the Justices concur, except LAWSON, J., not sitting, having been counsel for the State, as Attorney General.