68 So.2d 6

**SMARR v. STATE.**

2 Div. 319.

Supreme Court of Alabama.

Aug. 6, 1953.

Rehearing Denied Nov. 27, 1953.

32

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

Winton G. Wilson, Birmingham, for appellant.

LAWSON, Justice.

The appellant, Mattie Smarr, was indicted by a grand jury of Greene County on September 27, 1952, for the first degree murder of Ivory Posey.

Upon arraignment on November 27, 1952, accused pleaded not guilty and not guilty by reason of insanity. Trial was begun on December 8, 1952. On December 12, 1952, the jury returned a verdict of guilty of murder in the first degree and fixed punishment at death. Judgment and sentence were in accord with the verdict. From such judgment an appeal has been perfected to this court.

Appellant is a Negro woman approximately twenty-seven years of age. She was born in Greene County, where she lived until she was sixteen years of age, at which time she moved to Birmingham with other members of her family. In about 1950 she married Eddie Smarr, who evidently was raised in Greene County. In any event, his mother resided in or near the Mount Hebron community, a rural settlement in the western part of that county. Appellant has no children but a young boy, Eddie Smarr, Jr., four or five years of age, lived with appellant and her husband. This boy is evidently the son of appellant's husband by another woman.

On or shortly prior to September 22, 1952, appellant and Eddie Smarr, Jr., went from Birmingham to Greene County to the home of the mother of appellant's husband.

Willie and Alberta Posey, members of the Negro race, lived on a farm not far from the home where appellant was visiting her mother-in-law. The Poseys had nine children. Early on the morning of September 22, 1952, Willie and Alberta Posey went to work in a field some distance from their home. They left five of their children at home, namely, Lucy, twelve years of age; Ola Bee, eight years of age; Ivory, a boy, five years of age; Mattie Jean, two years of age; and a three-months-old baby girl, Cora May.

When Willie and Alberta returned to their home late in the afternoon of September 22, 1952, none of the children were at home. A search was begun to locate them. After some time Lucy, the twelve-year-old girl, was found wandering in a pasture some distance behind the Posey home. She had wounds on her face and head and was unable to talk coherently and at that time was unable to give any information as to the whereabouts of her little brother and three little sisters. The search continued. The bodies of three of the younger children were located in a creek. The body of one of the little girls was in the water, while that of the other had come to rest on top of some driftwood or other substance which had accumulated against a wire fence that was across the comparatively shallow creek. The body of Ivory, the five-year-old boy, was found with his face buried in soft wet sand.

Autopsies performed on the bodies of the children disclosed that the two little girls died as a result of drowning; Ivory, the five-year-old boy, died from a fractured skull.

Cora May Posey, the three-months-old girl, was not found that night.

Lucy Posey was a witness for the State. She testified substantially as follows:

The appellant, Mattie Smarr, came to the Posey home at about eleven o'clock on the morning of September 22, 1952, accompanied by Eddie Smarr, Jr. Mattie suggested that the Posey children go fishing with her. She left the house with Ola Bee, Mattie Jean, Ivory, and with the little boy, Eddie Smarr, Jr. Lucy and the baby remained at the Posey home. Later Mattie Smarr and all of the children who had left the Posey home returned except Mattie Jean, the two-year-old girl. Mattie Smarr told Lucy that Mattie Jean had gotten lost, but Ivory said that she had fallen into the creek. Lucy and Mattie Smarr then left the Posey home ostensibly in search of Mattie Jean. The other children remained at the Posey home. When Lucy reached the creek she saw Mattie Jean in the water. Mattie Smarr told Lucy to get in the creek to help Mattie Jean. When Lucy turned her back, Mattie Smarr pushed her into the creek. Lucy had no recollection of any subsequent events until she "came to" in a Demopolis hospital.

Mattie Smarr and Eddie Smarr, Jr., remained in Greene County at the home of the former's mother-in-law until Wednesday morning, September 24, 1952, when they were driven to Birmingham by Mattie's brother and mother.

On the night of September 24, 1952, Willie Posey, the father of the dead children, went to the home of Mattie Smarr in Birmingham, accompanied by Mr. Frank Lee, the sheriff of Greene County, and three or four other officers. They found the three-months-old baby girl, Cora May Posey, in the bed with Mattie, who told them the baby was hers; that it was a boy born on the preceding Monday night.

There was a new-looking bassinet in the room. The baby was unhurt and was returned to its home in Greene County that night.

Mattie Smarr was arrested for the murder of the Posey children and was taken to the Greene County jail at Eutaw. Shortly after her confinement in jail Mattie made a statement wherein she admitted that she killed the Posey children.

The evidence for the State not only showed the commission of the crime charged in the indictment, but that Mattie Smarr was the person who killed Ivory Posey as charged in the indictment. There was no evidence presented on behalf of the accused tending to controvert that evidence on the part of the State.

The accused did not testify and the evidence adduced on her behalf was all in support of her plea of not guilty by reason of insanity and that she was insane at the time of the trial.

We will discuss the insanity questions after having treated certain rulings of the trial court which occurred during the course of the trial.

█ Although the accused was not on trial for the killing of Ola Bee and Mattie Jean Posey, the three killings were parts of a single transaction, and were in fact inseparable. Each was of the res gestae of the other, and every fact and incident illustrative of one was competent also in illustration of the other. Keith v. State, 253 Ala. 670, 46 So.2d 705, and cases cited; Parsons v. State, 251 Ala. 467, 38 So.2d 209; Cantey v. State, 244 Ala. 108, 11 So.2d 844. Hence, the trial court did not err in permitting the State to prove the killing of Ola Bee and Mattie Jean Posey. Likewise, it was not error to permit the State to show the injuries to Lucy Posey and her physical condition at the time she was found. The attack on her was within the res gestae of the crime against her little brother and was admissible as shedding light on the acts, motive and intent of the assailant. Snead v. State, 251 Ala. 624, 38 So.2d 576, and cases cited.

█ Pictures of the scene of the homicide taken a short time thereafter are admissible in evidence. Blue v. State, 246 Ala. 73, 19 So.2d 11; Pilley v. State, 247 Ala. 523, 25 So.2d 57, and cases cited. It was not error to permit a witness to testify that photographs shown to him truly depicted the scene of the crime at the time of its commission, although such testimony was elicited prior to the time the photographs were admitted in evidence, inasmuch as the photographs were not seen by the jury at that time and were later introduced in evidence after proper preliminary proof adduced from the photographer.

█ Photographs of the dead body of Ivory Posey were admitted without error. Maund v. State, 254 Ala. 452, 48 So.2d 553. Under the facts of this case we are not willing to say that the trial court erred to a reversal in permitting the introduction in evidence of the photographs of the dead bodies of the two girls, Ola Bee and Mattie Jean. Grissett v. State, 241 Ala. 343, 2 So.2d 399.

█ It was not error to permit Sheriff Lee to testify that he went to the scene of the crime or in allowing testimony as to who were present when the bodies of the three children were found.

█ The qualifications of Dr. Nelson Grubbs as a State Toxicologist were admitted. It was proper to permit this witness to describe the wounds which he observed on the face and head of Ivory Posey and to testify that in his opinion such wounds were sufficient to have caused death. Phillips v. State, 248 Ala. 510, 28 So.2d 542. The testimony of this witness as to the cause of death of the two girls was likewise admitted without error.

An expert such as a physician or a qualified toxicologist may testify that in his opinion an injury resulted from a blow. Roan v. State, 225 Ala. 428, 143 So. 454.

██ It was not error to permit Lucy Posey to testify as to what the accused said when she came to the Posey home on the day of the homicide. All the attendant circumstances leading up to and eventuating in the homicide form a part of the res gestae. Smith v. State, 253 Ala. 220, 43 So.2d 821; Collins v. State, 138 Ala. 57, 34 So. 993. In Jones v. State, 181 Ala. 63,

61 So. 434, it was said: "The acts, declarations, and demeanor of an accused, before or after the offense, whether part of the res gestae or not, are admissible against him, but unless a part of the res gestae are not admissible for him." 181 Ala. at page 78, 61 So. at page 439.

■ Reversible error does not appear in the action of the trial court in permitting the solicitor to ask leading questions of the State's witness Lucy Posey, who at the time of the trial was approximately twelve years of age. Myhand v. State, 259 Ala. 415, 66 So.2d 544, and cases cited.

■ The examination of Sheriff Lee and Highway Patrolman Simpson, though not put under the "rule" with the other witnesses, was in the discretion of the court. Webb v. State, 100 Ala. 47, 14 So. 865; Beaird v. State, 219 Ala. 46, 121 So. 38.

■ There is no requirement of law that the description of wounds on the body of a deceased person must be given by an expert witness. The trial court did not err in permitting the expert and nonexpert witnesses to testify as to the appearance and location of the wounds. Phillips v. State, 248 Ala. 510, 28 So.2d 542, and cases cited.

■ The predicate as laid by the State was in all respects sufficient to show prima facie that the confession was voluntarily made. There was no testimony tending to refute the evidence of Sheriff Lee to the effect that the confession was voluntarily made. The confession was admitted in evidence without error. Snead v. State, 251 Ala. 624, 38 So.2d 576. See Redwine v. State, 258 Ala. 196, 61 So.2d 724.

■ The trial court did not err in refusing to permit defendant's witness Leola Thomas to testify as to statements made to her by defendant's mother in regard to the defendant "having a spell." Questions to which objections were sustained called for hearsay testimony. Fondren v. State, 204 Ala. 451, 86 So. 71.

■ The accused, in support of her plea of not guilty by reason of insanity, sought to prove that other members of her immediate family were insane. Willie May Bradford, a sister of accused, was examined by counsel for accused relative to the mental condition of another sister, Mary. The trial court sustained the State's objection to the following question asked Willie May Bradford by counsel for defendant: "Based on that, would you say that Mary is frenzy-minded or insane?" There was no error in this ruling. Aside from the fact that the question called for the witness' opinion as to whether Mary was "frenzy-minded," the proper predicate was not laid. The acts and conduct of Mary upon which the witness could express an opinion as to her insanity were not shown. A nonexpert witness cannot express an opinion as to the insanity of a person because of long and intimate acquaintance, unaccompanied with a detail of the facts and circumstances on which such an opinion is based. Wise v. State, 251 Ala. 660, 38 So.2d 553. Moreover, the witness Willie May Bradford later on in her direct examination was permitted to express an opinion that Mary was insane. The defendant cannot complain of a ruling by the court refusing to permit a witness to answer a question when the court thereafter permits the same witness to answer substantially the same question. Stephens v. State, 250 Ala. 123, 33 So.2d 245.

■ A witness cannot testify as to what he "thought" or what another person was "supposed" to do. Barber v. State, 22 Ala. App. 322, 116 So. 322, certiorari denied, 217 Ala. 330, 116 So. 323.

■ The trial court did not err in declining to declare a mistrial on the ground that during the course of the trial nine law enforcement officers were present in the courtroom, including the sheriff, his deputy, the chief of police of the town of Eutaw, two Alabama Beverage Control officers, and four uniformed Highway Patrolmen. It is not unusual for those engaged in the enforcement of the law to be present during the course of trials and certainly this record reflects no prejudice to the defendant because of the presence of the officers.

■ Dr. Joe B. Smith, the only physician examined, was introduced by the State. On direct examination he testified that he

had been a practicing physician for sixteen years; that during the course of his practice he had had occasion to observe and treat persons suffering from various types of mental disorders; that he had examined the accused on three occasions since her confinement in the Greene County jail, and on two of those occasions his examination related specifically to her mental condition. This witness was then permitted to testify that: "She is sane." It was later brought out that at the time he expressed the opinion as to the sanity of accused he was aware of her claim that she had for a number of years been afflicted with "fits" or "spells."

We are of the opinion that the trial court did not err in permitting Dr. Smith to express the opinion that accused was sane. Stallworth v. Ward, 249 Ala. 505, 31 So.2d 324; White v. State, 237 Ala. 610, 188 So. 388; Rhodes v. State, 232 Ala. 509, 168 So. 869; Kilpatrick v. State, 213 Ala. 358, 104 So. 656; Porter v. State, 140 Ala. 87, 37 So. 81. This conclusion is not in conflict with our holdings in Wise v. State, 251 Ala. 660, 661, 38 So.2d 553, and Woods v. State, 186 Ala. 29, 65 So. 342. In each of those cases the physician expressly stated that he had never examined the defendant with reference to his mental condition.

■ During the course of the cross-examination of Dr. Smith counsel for defendant propounded a hypothetical question, to which the trial court sustained the State's objection. Counsel for defendant then stated: "Assuming all of these statements I have asked you to assume, what would then be your opinion as to the sanity or insanity of that particular patient." The witness then replied "insane." It is clear that no reversible error is made to appear in the action of the court in sustaining the objection to the question, which when put in what was considered better form was answered favorably to the defendant. Stephens v. State, 250 Ala. 123, 33 So. 2d 245.

■ The trial court properly sustained the State's objections to the effort on the part of counsel for defendant to cross-examine Dr. Smith concerning statements contained in a book called "Gray's Attorneys' Textbook on Medicine." Likewise the court did not err in refusing to permit counsel to read to the jury excerpts from that book, which was not in evidence.

Under the rule established by this court in 1857 in the case of Stoudenmeier v. Williamson, 29 Ala. 558, we have held that textbooks on mental diseases admitted or proved to be standard works with the medical profession may be introduced in evidence and extracts therefrom read to the jury. Russell v. State, 201 Ala. 572, 78 So. 916; Anderson v. State, 209 Ala. 36, 95 So. 171. See Merkle v. State, 37 Ala. 139; Bales v. State, 63 Ala. 30; Birmingham Ry., L. & P. Co. v. Moore, 148 Ala. 115, 42 So. 1024; Barfield v. South Highland Infirmary, 191 Ala. 553, 68 So. 30; Watkins v. Potts, 219 Ala. 427, 122 So. 416, 65 A. L.R. 1097; Burns v. State, 226 Ala. 117, 145 So. 436; City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637.

But relevant extracts from medical treatises are not in themselves self-proving, but are admissible only when recognized and approved by the medical profession as standard. The work in question was not shown to be a standard work or recognized authority by the medical profession on the subject at issue, and the rulings of the court in regard thereto were without error. Franklin v. State, 29 Ala.App. 306, 197 So. 55, certiorari denied, 240 Ala. 57, 197 So. 58.

■ Although a plea of not guilty by reason of insanity was interposed upon arraignment, no effort was made to secure the appointment of specialist practitioners in mental and nervous disorders to inquire into the sanity of the defendant at the time of the commission of the offense or at the time of trial. § 425, Title 15, Code 1940. Nor was any effort made prior to trial to have the court suspend the trial and submit to a jury an inquisition as to defendant's sanity at the time of trial. § 426, Title 15, Code 1940.

As before indicated, there were no expert witnesses called on behalf of defendant and Dr. Smith, a witness for the State, expressed the opinion that she was sane.

The evidence for the defendant as it related to her mental condition at the time of the commission of the offense was in substance as follows: The defendant for several months prior to September, 1952, had been imbued with the idea she was pregnant and there were certain physical manifestations of such condition. She attended the "Slossfield" Health Facility, evidently operated by the Jefferson County Health Department, several times between March and June, 1952. She reported to those who examined her at that facility that she was five months pregnant, but after several examinations she was advised on June 24, 1952, that she was not pregnant. The defendant continued to assert her pregnancy and in the early part of September, 1952, bought baby clothes and a bassinet, stating that she expected to have a baby soon. As she left for Greene County shortly before the homicide, she told her mother that she was going to the home of her mother-in-law to have the baby so she could have the assistance of her mother-in-law.

Defendant's husband, her mother and two of her sisters gave testimomy in regard to "fits" or "spells" which defendant had frequently. According to her mother and sisters, the "fits" or "spells" began when defendant was about ten years of age and their frequency and intensity increased when she reached the age of fourteen years. The duration and frequency of these alleged attacks differed with the several witnesses. But we think it fair to state that if their testimony is to be believed, the defendant had for a long period of time been subject to such attacks and that she would remain unconscious for the duration of the attacks. At least one of these witnesses, however, testified that the defendant appeared to be normal in all respects except for the duration of the attacks. There was no evidence tending to show the condition of the defendant on the day of the homicide.

██ The law on insanity as a defense in a criminal case is so well recognized that we will advert to it only briefly. Neither abnormality nor subnormality precludes liability for crime where there exists sufficient mental capacity to entertain the requisite criminal intent. As excuse for the crime, the burden was on the defendant to clearly prove to the reasonable satisfaction of the jury that she was so afflicted by disease of the brain when the offense was committed as to render her so insane that she did not know right from wrong with respect to the particular offense charged, or by reason of such mental disease she could not resist doing the wrong; and the crime must have been the product solely of such diseased mental condition. Lakey v. State, 258 Ala. 116, 61 So. 2d 117, and cases cited; Parsons v. State, 81 Ala. 577, 2 So. 854.

The issue, therefore, of insanity as excuse for the crime was for the determination of the jury. This issue was determined adversely to the defendant. We think the verdict was well founded. We hold, therefore, that neither the affirmative charge nor a new trial on the weight of the evidence was due the defendant on the issue of her mental condition at the time of the commission of the crime.

██ The trial of this case had to be interrupted on more than one occasion due to the fact that the defendant was seemingly unable to proceed with the trial. On each of such occasions the jury was removed from the courtroom. While testimony was taken in the absence of the jury relative to the physical and mental capacity of the defendant to proceed with the trial, the defendant was present at all times. On the first of such occasions Dr. Smith was called in by the court to examine the defendant and it was his opinion that she was suffering from hysteria and would be unable to proceed for a period of thirty minutes to an hour. This occurrence took place late in the afternoon and court was recessed until the following morning, at which time the court determined that the defendant was able to proceed.

Counsel for defendant then requested that the trial be suspended and defendant be examined by experts on mental diseases. The trial court refused to suspend the trial indefinitely for that purpose. The question as to whether or not the defendant was able to proceed with the trial was one which we

think was addressed to the discretion of the trial court, who was present and familiar with the prevailing circumstances. It was presented with the question of whether defendant was feigning illness or whether she was actually incapacitated. As we read the record, the trial court was amply justified in continuing with the trial of the cause and its action in not suspending the trial is not revisable on appeal. Rohn v. State, 186 Ala. 5, 65 So. 42; Whitfield v. State, 236 Ala. 312, 182 So. 42. See Campbell v. State, 257 Ala. 322, 58 So.2d 623.

Duly mindful of our duty in cases of this character, we have examined the record for any reversible error whether pressed upon our attention or not. We have herein dealt with all questions calling for serious treatment. We find no reversible error in the record and the cause is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.