82 So.2d 299

**Alma SMITH**

v.

**STATE.**

**8 Div. 378.**

Court of Appeals of Alabama.

March 16, 1955.

Rehearing Denied April 5, 1955.

162

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Owen Bridges, of counsel, for the State.

Britnell & McEntire, Decatur, for appellant.

CARR, Presiding Judge.

This case was originally assigned to Judge PRICE.

The members of the court found themselves in disagreement and unable to reach an unanimous conclusion as to certain controlling questions, so we certified these to the Supreme Court.

In the opinion now prepared by Judge PRICE, there appears the response of the Supreme Court to our abstract questions, and also a delineation of additional testimony given by Dr. J. B. Wiley. These facts are sufficient to form the basis for my views.

The Supreme Court held in effect, 82 So.2d 296,[1] that a physician who is qualified

and licensed under the laws of our State to engage in the general practice of medicine is qualified as an expert to testify as to the sanity or insanity of a person. However, " * * * in order for him to be qualified to express an opinion as an expert based only on personal observation or examination, such observation or examination must have been with reference to the person's mental status."

In the case at bar the critical question for decision is whether or not the evidence tends or establishes an inference that Dr. Wiley did observe or examine the defendant with reference to her mental status.

We have a long line of authorities which hold that the admission of evidence without sufficient foundation for its admissibility, if error when it is introduced, is without injury if subsequently in the trial proceedings the essential and required connecting proof is established.

This rule has been applied to expert testimony. Traffenstedt v. State, 34 Ala.App. 273, 38 So.2d 619; Snow v. Allen, 227 Ala. 615, 151 So. 468.

Without dispute in the evidence in the instant case the appellant was highly nervous and had been for some time.

Prior to the occasion of the homicide Dr. Wiley had been treating the defendant professionally for seven or eight years. He observed her in this relationship on an average of two or three times a year and saw her non-professionally at other times. He attributed her nervousness to "chronic anemia and low blood pressure." On the basis of this observation and examination, he testified that she was sane.

I am unable to escape the conclusion that over this long period of time he examined and observed both the physical and mental status of the defendant. Certainly, a fair inference arises from the evidence that he did. If he did not, I am unable to see how he could have arrived at the conclusion that her nervous condition was not attributable to a mental status, but rather to a physical condition.

Judge HARWOOD concurs in the conclusion reached by the writer. Therefore this will become the majority opinion of this court.

It is ordered that the judgment below be affirmed.

Affirmed.

PRICE, Judge (dissenting)

Appellant was indicted for murder in the first degree. Upon arraignment she interposed pleas of not guilty and not guilty by reason of insanity. She was convicted of manslaughter in the first degree and sentenced to eight years in the penitentiary.

It is undisputed in the evidence that appellant shot and killed her husband, Floyd Smith.

The question of the correctness of a ruling by the trial court on the admission of evidence was certified to the Supreme Court. The response by the Supreme Court, which sets out the question, is as follows:

"We have received the following communication from the Judges of the Court of Appeals certifying to us, under the provisions of Code 1940, Tit. 13, § 88, questions of law as to which said Judges differ, to-wit:

" 'The Judges of this Court are in disagreement and unable to reach an unanimous conclusion as to certain controlling questions in the case of Smith v. State from Morgan Circuit Court, now pending in this court.

" 'The defendant was convicted of manslaughter in the first degree under an indictment charging murder in the first degree. Upon arraignment she interposed pleas of not guilty and not guilty by reason of insanity.

" 'On the trial she introduced several witnesses whose testimony tended to sustain her plea of not guilty by reason

of insanity. In rebuttal the State offered Dr. J. B. Wiley. The record discloses the following:

"' "Q. State your name to the jury. A. J. B. Wiley.
"' "Q. You are a regular licensed and practicing physician and surgeon in Decatur, Alabama? A. Yes, sir.

"' "Mr. McEntire: We admit the doctor's qualifications.

"' "Q. Did you know the defendant, Alma Smith? A. Yes, sir.

"' "Q. Will you tell the jury how long you have known her? A. I imagine since about 1945 or '46.

"' "Q. Do you recall when she became a patient of yours? A. The first record I have was in 1946.

"' "Q. From that time to the present, doctor, has she been, periodically, a patient of yours? A. Yes, sir.

"' "Q. How many times would you say, in your best recollection, you have had occasion to treat, see or observe Mrs. Smith as a patient over that period of time? A. I think an average of two or three times a year, that is, actual office calls.

"' "Q. Did you also have occasion to see, observe and to know her at times other than as a patient, over that period of years? A. Yes, I saw her at intervals.

"' "Q. In your professional opinion, state whether or not over this period of time and as of February 8, 1953, Mrs. Smith was of sound mind or not.

"' "Mr. McEntire: We object to that; the witness is not shown to be qualified.

"' "Court: Overruled.

"' "Mr. McEntire: Reserve an exception.

"' "A. Yes." '

"The following abstract questions are hereby certified to your court for an opinion as guidance to our court in said cause:

"(1) Is a regularly licensed physician, by virtue of that fact, qualified as an expert to give opinion evidence as to sanity or insanity?

"(2) If your answer to the foregoing question is in the negative, then is a regularly licensed physician by virtue of his association with the patient, such as is disclosed by the quoted portion of the record, thereby rendered qualified to give expert opinion evidence in the field of mental diseases?

"The foregoing are propounded under the provisions of Title 13, Section 88, Code of 1940. As aid in determining this inquiry, the transcript is herewith submitted.

"Reply to Certified Questions

"It seems to be well-established in this jurisdiction that, as a general proposition, a physician who is qualified and licensed under Alabama law to engage in the general practice of medicine is qualified as an expert to formulate an opinion as to the sanity or insanity of a person, although such physician is not a specialist in mental diseases. Tullis v. Kidd, 12 Ala. 648, 649, 650; McAllister v. State, 17 Ala. 434, 437, 438, 52 Am.Dec. 180; In re Carmichael, 36 Ala. 514, 522–524; De Phue v. State, 44 Ala. 32, 39; Braham v. State, 143 Ala. 28, 38 So. 919; Odom v. State, 174 Ala. 4, 7, 8, 56 So. 913; Fondren v. State, 204 Ala. 451, 452, 453, 86 So. 71; Rhodes v. State, 232 Ala. 509, 510, 168 So. 869; White v. State, 237 Ala. 610, 612, 188 So. 388; Towles v. Pettus, 244 Ala. 192, 197, 12 So.2d 357; Stallworth v. Ward, 249 Ala. 505, 507, 31 So.2d 324. However, the principle is recognized in some of the decisions that a physician cannot express his opinion as an *expert* when such opinion is based on his examination or observation of a person, unless such examination or observation was with reference to the person's mental condition. Smarr v. State, 260 Ala. 30, 35, 36, 68 So. 2d 6; Wise v. State, 251 Ala. 660, 664, 38 So.2d 553; Woods v. State, 186 Ala. 29, 32,

33, 65 So. 342; Porter v. State, 140 Ala. 87, 91, 92, 94, 37 So. 81; Kroell v. State, 139 Ala. 1, 5, 6, 13, 14, 36 So. 1025. This is not to say that a physician is incompetent to express an opinion as a *non*-expert when the opinion is based on his examination or observation of a person without reference to his mental condition. Of course, when so testifying, the rules applicable to non-experts apply.

"We quote the following from Weihofen, Mental Disorder as a Criminal Defense (1954), pp. 273, 274, 277, as bearing on the question under consideration:

" 'In general, any person who is able to give the jury appreciable help upon a subject in which special knowledge is necessary or helpful in arriving at a correct inference from the facts proved, is qualified to testify as an expert on that subject. Just how much skill, knowledge, and experience a witness must have in order to qualify as an expert cannot be determined by any general rule, and the competency of each particular witness is a matter resting in the sound discretion of the trial court. The exercise of this discretion will not be overturned by the upper court, except for clear abuse.

" 'In cases where mental condition is an issue, trial courts in practice usually admit as an expert any practicing, licensed physician, and in the majority of states it has been expressly held that physicians in general practice may testify as experts on insanity. The fact that the physician disclaims being an expert is immaterial, his competence being a matter for the court, and not himself, to decide.

\*    \*    \*    \*    \*    \*

" 'But there are good reasons for not laying down strict exclusionary rules. "The sound solution is not the oversimplified one of 'passing a law' (or a rule) attempting to define the qualifications that a witness must possess before he will be allowed to testify as an expert in specialized fields of medical science. Rather, it lies in insisting that the qualification of any particular witness be left to the discretion of the trial judge, and in encouraging trial judges to exercise this discretion to exclude obviously unqualified witnesses."

" '*Bases for Expert Opinion.* A qualified expert may testify to his opinion concerning the defendant's mental condition based either upon (1) personal examination of the defendant made by the witness, or (2) the testimony in the case, if he has been in court and heard it all. (3) He may also give his opinion upon hypothetical cases propounded by counsel.'

"From the quoted excerpt from the testimony, supra, it is apparent that the basis for the physician's expert testimony was his personal examination and observation of the defendant. However, it further appears from the excerpt that neither his examination nor his observation was with reference to the defendant's mental condition. Thus the critical question for us is whether the physician was competent to testify as an *expert* with respect to defendant's mental condition. From a consideration of the Alabama cases, supra, our view is that a physician, although generally qualified to testify as an expert as to the sanity vel non of a person, in order for him to be qualified to express an opinion as an expert based only on personal observation or examination, such observation or examination must have been with reference to the person's mental status. Accordingly, based on the quoted excerpt of the testimony, our conclusion is that the physician in this case was not competent to express an opinion as an *expert* with respect to defendant's sanity."

The further testimony of the witness immediately following the portion quoted in the certified question is as follows:

"Q. Doctor, the various times you have examined her, did you arrive at any diagnosis as to Mrs. Smith's physical condition? A. Yes, sir.

"Q. Will you tell us what they were? A. She suffered from chronic anemia and low blood pressure.

"Q. You prescribed treatment for those? A. Yes, sir.

"Q. Did she evidence any nervousness during the time she was a patient of yours? A. Yes, sir.

"Q. Did you make any diagnosis of that? A. Well, I thought it was a result of the other two conditions.

"Q. A result of the other two conditions? A. Yes, sir.

"Q. Doctor, are you familiar with what is called an anxiety neurosis? A. Yes, sir, in part.

"Q. Will you tell the jury what anxiety neurosis is? A. Say there is a mental condition that is brought on by being anxious about something or being worried about something.

"Q. Does it involve a disease of the mind, doctor?

\*   \*   \*   \*   \*   \*

"A. No."

From the physician's statements regarding his diagnosis of Mrs. Smith's condition, it is clearly evident that his examination and observation of her was with reference to her physical rather than to her mental condition. His explanation of the term "anxiety neurosis" was not shown to be related in any way to his examination of defendant, being merely an abstract definition of that term, with no testimony as to whether or not he examined or observed her relative to anxiety neurosis. This further testimony did not sufficiently qualify the witness, under the Supreme Court ruling, supra, so as to cure the error in first allowing him to express his opinion as an expert with reference to defendant's mental condition.

We have examined the record with reference to other insistences of error and find no merit in them; hence discussion of these points is unnecessary.

The judgment of conviction in my opinion should be reversed and the cause remanded.