89 So.2d 690

Herman LAWHORN

v.

STATE.

7 Div. 341.

Court of Appeals of Alabama.

June 19, 1956.

Rehearing Denied Aug. 14, 1956.

Wilbanks & Wilbanks, Alexander City, for appellant.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Under an indictment charging manslaughter in the first degree of Emmett L. Hall, this appellant's jury trial resulted in a verdict and judgment of guilty of manslaughter in the second degree.

Mr. Hall met his death as a result of a collision between an automobile driven by his son, and an automobile driven by the appellant.

The collision took place at an intersection of Highways 11 and 78 in Calhoun County.

The evidence presented by the witnesses for the State, and those for the defense, is in hopeless and irreconcilable conflict.

The testimony of James F. Hall, son of the deceased, and of Mrs. James F. Hall, was to the effect that the Hall car approached the intersection heading in an easterly direction. The Hall car approached and entered the intersection at a speed of between 20 and 25 miles per hour.

The appellant's car, heading south, was observed some 200 feet, approaching the intersection. It was travelling between 50 and 60 miles per hour. It was next observed by the occupants just as it was about to collide with the Hall car, still maintaining its speed.

The car driven by the appellant struck the Hall car, according to witnesses for the State, on its left side, at about the center of the body.

The Hall car was knocked some 35 feet to the south, turned over, and landed with its front facing north.

Mr. H. E. Ray, a highway patrolman, was called to the scene and arrived shortly after it had occurred.

For the State Mr. Ray testified that the highway at the intersection is approximately 35 feet wide. Debris, glass, and dirt indicated that the point of impact of the automobiles was three feet from the center of the intersection. While Mr. Ray indicated the point on a chart, this chart was not forwarded with the record and is not before us.

Mr. Ray further testified that there was a stop sign on the north side of Highway 11, the direction from which the appellant was approaching, and there were no such signs on Highway 78, on which the Hall car was travelling. There were also signs showing the speed limit in the area of the intersection to be 40 miles per hour.

After the collision the deceased was removed from the Hall car, placed in an ambulance, and taken to a hospital in Anniston.

There he was attended in an emergency room by Dr. W. B. Mitchell.

Dr. Mitchell testified that deceased was in a state of profound shock when first seen by him, and was suffering from a very crushing injury to the chest, with multiple and extensive rib fractures. The deceased died within five or ten minutes after being first seen by the doctor from these injuries.

The doctor further testified that upon his examination of deceased he found a tube had been inserted into the chest cavity by some prior surgical operation.

In this connection it might be noted that Mr. and Mrs. Hall had described deceased's health as good or fair, prior to the accident, and although under medical care he was able to be up and do work around his house.

For the defense, the appellant, his wife, and a son, who were passengers in the appellant's car, were presented as witnesses.

Their testimony was directed toward showing that as appellant approached the intersection he brought his car to a stop. It was their contention that as the Hall car approached the intersection at a high rate of speed it swerved across the highway, crossed the north lane of Highway 11, and crashed into the right side and right front fender of the appellant's vehicle.

The appellant also presented several character witnesses who affirmed his good reputation.

There was also received in evidence pictures of the two automobiles taken after the collision. These show that the Hall car was badly crushed in on the left side, the front part of the car being undamaged back to the left front door. The pictures of appellant's car shows it to have been considerably damaged across the entire front, the grill work, radiator, and front portions of the fenders being considerably pushed in.

The first witness presented by the State was Mr. Ray, the patrolman. The State then offered Mr. James F. Hall, the deceased's son, as a witness.

Appellant objected to this witness testifying on the ground he had been in the court room, and was not put under the rule.

■ Allowing the examination of this witness, though not put under the rule with the other witnesses, was in the discretion of the court. Smarr v. State, 260 Ala. 30, 68 So.2d 6; Miller v. State, 21 Ala.App. 261, 107 So. 226; Shumate v. State, 19 Ala. App. 340, 97 So. 772; Smith v. State, 36 Ala.App. 646, 62 So.2d 473.

■ No error resulted from the sustaining of the State's objections to two questions propounded to Patrolman Ray as to whether there was plenty of room, or ample for the Hall car to have passed if the appellant's car had been in the intersection.

· The questions obviously called for conclusion based on a mental operation on the part of the witness, and were, invasive of the province of the jury.

■ Likewise, the court properly sustained the State's objection to the witness Hall seeking testimony as to whether the deceased had cancer of the lungs.

■ The evidence tends to show that deceased was in "fairly good" health prior to the collision. Thereafter, at the hospital he was found to have a severely crushed chest with multiple rib fractures, which injuries caused his death. Whether deceased suffered from cancer of the lungs is entirely immaterial. One is not protected from his wrongful acts merely because the person injured probably would have died of a disease from which he was suffering. State v. Morea, 2 Ala. 275.

■ The evidence presented by the State was abundant in its tendencies supporting the verdict rendered. The photographs of *the two automobiles furnish in visual* form almost indisputable corroboration of the testimony of the State's witnesses, and likewise a complete refutation of the testimony of the material defense witnesses.

The court therefore did not err in denying the appellant's motion to exclude the State's evidence, nor in denying his motion for a new trial because of the insufficiency of the evidence.

■ Appellant's charges 4, 10, and 14 were refused without error, inasmuch as the principles enunciated in these charges were covered in the court's oral charge.

■ Charge 3 was properly refused as being confusing, particularly the use of the phrase "while committing an unlawful act in an improper manner." We know of no proper way to commit an unlawful act.

■ · Charge 5 was properly refused in that it omits the doing of a lawful act in a negligent manner as being an alternative constituting involuntary manslaughter.

Charge 9 contains the same defect as ·charge 5, and in addition is not predicated upon the evidence.

■ Charge 11 is confusing in that it includes the charge of murder, and also some principles of the defense of insanity. It was properly refused.

■ Charge 16 was faulty in omitting the alternative of doing an unlawful act, not amounting to a felony, resulting in a death, as constituting involuntary manslaughter.

Affirmed.