# Melvin v. Murphy.

### Ejectment.

(Decided November 20, 1913.   63 South. 546.)

1. *Evidence; Opinion; Sanity.*—A non-expert must not only have had the opportunity to form a judgment in order to give his opinion of the existence of an unsound condition of mind in another, but the facts upon which he bases such judgment should be stated.

2. *Same.*—A non-expert must base his opinion as to the insanity of a party solely upon his own personal knowledge, observation, acquaintance, etc., of and with such person.

3. *Same; Presumptions.*—If shown to be habitual and permanent in its nature, insanity at any particular time is presumed as a matter of law to exist at any subsequent time, and from its existence alone at a later time a presumption may arise that it existed at a given prior time, although the probative value of subsequent insanity to show insanity at a prior time depends upon the nature and degree

of insanity shown, and its nearness in time to the act under consideration.

4. *Same; Competency.*—Where the question at issue was defendant's sanity vel non when he executed a mortgage on January 5, 1911, his wife who had been married to him for four years and who testified that he had a severe attack of typhoid fever in the year 1910, and that thereafter for weeks at a time he would be ferocious and unkind to his family and to her, and that he had no memory of his business affairs, was competent to testify that in her opinion he was insane at that time.

5. *Appeal and Error; Discretion; Opinion Evidence.*—Whether a witness, expert or otherwise, is competent to give his opinion as to one's sanity is for the court and not for the jury, and the determination thereof will not be revised unless clearly erroneous.

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Ejectment by Thomas J. Murphy against Daniel J. Melvin. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The action was ejectment, and the special plea was that a mortgage was the basis of the suit, and that at the time the mortgage was executed by the defendant he was of such unsound mind that he did not understand the subject of the contract and its nature and probable consequences, and suggested the appointment of a guardian ad litem. It does not appear whether such a guardian was appointed except that the judgment recites that defendant was represented by his guardian ad litem. The other facts appear from the opinion.

F. W. HARE, for appellant. There is but one question in this case, and the contention of the appellant is that the court below misconceived the law as to when and under what circumstances a non expert can offer his opinion on the question of the insanity of an acquaintance.—*Taylor v. State,* 83 Ga. 647; *Sage v. State,* 91 Ind. 141; *Stubbs v. Houston,* 33 Ala. 555; *Norris v.*

*State,* 16 Ala. 776; *In re Carmichael,* 36 Ala. 514; *Ford v. State,* 71 Ala. 385; *Parrish v. State,* 139 Ala. 42.

BARNETT & BUGG, for appellee. The court was not in error in its rulings on the admission and rejection of evidence as to the sanity vel non of the defendant.— *Norris v. State,* 16, Ala. 776; *Braham v. State,* 143 Ala. 41; *Parrish v. State,* 139 Ala. 16; *Odom v. State,* 56 South. 913; *Jones v. State,* 61 South. 434; *Pike v. Pike,* 104 Ala. 645.

DE GRAFFENRIED, J.—"To authorize a nonexpert to give his opinion of the existence of an unsound condition of mind, he must not only have had the opportunity to form a judgment but the facts should be stated upon which it is based."—*Burney v. Torrey,* 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33.

There are some loose expressions in some of our cases indicating that mere long and familiar acquaintance with the person alleged to be insane authorizes a nonexpert, without stating the facts upon which his judgment is based, to testify that in his opinion such person is insane, but the above-quoted rule is the law of this state.—*Burney v. Torrey, supra; Odom v. State,* 174 Ala. 4, 56 South. 913; *Parrish v. State,* 139 Ala. 16, 36 South. 1012.

2. The witness, whether expert or not, must first be shown to be competent or qualified to give an opinion as to the sanity or insanity of the party inquired of. The question as to the competency of the witness, whether expert or not, to give an opinion as to the sanity or insanity of the party inquired of is a question for the court and not for the jury. As to this question, its decision as to competency will not be revised unless it clearly appears to have been erroneous.—*Parrish v. State, supra; Odom v. State, supra.*

3. A nonexpert witness must base his opinion as to the insanity of the party inquired of solely "upon his own personal knowledge, observation, acquaintance, experience, etc., with the individual inquired of."—*Parrish v. State, supra; Burney v. Torrey, supra; Dominick v. Randolph,* 124 Ala. 557, 27 South. 481; *Odom v. State, supra.*

4. "It is a sound general rule that insanity at any particular time, if shown to be habitual and permanent in its nature, is prima facie presumed as a matter of law to exist at any future time; and alone from its existence at a later time a presumption of fact may arise of its existence at a given prior time.—*Murphree v. Senn,* 107 Ala. 424, 18 South. 264; *McAllister v. State,* 17 Ala. 434, 52 Am. Dec. 180. But in the latter case it is clear that the probative value of subsequent insanity to show insanity at any prior time will depend upon (1) the nature and degree of the insanity shown, and (2) its nearness or remoteness in point of time to the act under consideration."—*Odom v. State, supra.*

5. We have set out the above general rules because each of them has its influence upon the only question presented by this record. We have not undertaken to give the reason for either of the rules because the reasons upon which they are based are set forth in the cases from which we have extracted them and which we have above cited.

6. The only question presented by this record is whether the trial court committed an error in refusing to allow certain nonexpert witnesses, or either of them, to testify that in their opinion Daniel J. Melvin was insane when he executed a mortgage on January 6, 1911. One of these witnesses was the wife of the said Daniel J. Melvin, and, according to the bill of exceptions, she testified as follows: "I am the wife of the

defendant. We were married four years ago the 17th day of last September, and we have lived together as man and wife in the same room in the same house, day in and day out, since our marriage. My husband had a severe case of typhoid fever in the fall of 1910." The witness was then asked to "detail to the court any unusual circumstances that had happened since said spell of fever; anything out of the ordinary in the conduct of the defendant." The witness replied: "Well, lots of it; for two weeks at a time he would be ferocious. He would be very ill to his family, to his children and me. He has not had any memory of his business at all. About the time the mortgage to George Cunningham was executed, my husband told me I had to go with him and had to sign some paper. I do not know what paper it was. He told me I had to do. I told him I did not want to go to Monroeville to sign a mortgage, and he told me I had it to do or do worse."

Taking into consideration the fact that this witness had for more than two years before the execution of the mortgage lived with the defendant as his wife, she certainly, in the above testimony, showed a sufficiently intimate acquaintance with the defendant to be allowed to give her opinion as to his insanity on the named occasion, provided the facts upon which she testified that she was prepared to base her opinion as to the insanity of the defendant are sufficient to meet the requirements of the above rules. It is true that the question which the witness answered covered the entire period between the spell of typhoid fever in September, 1910, and the day of the trial, and we might possibly, by a strained construction of the language of the witness, say, to uphold the ruling of the trial court, that the alleged ferocity of the defendant, unkindness to members of his family, and his entire loss of memory as to his

business affairs may all have occurred long after the execution of the mortgage. In other words, we might possibly say that the alleged phenomena to which the witness testified all may have occurred some time after the execution of the mortgage, and that therefore the witness showed by her testimony no legal data upon which to base her statement that, at the time of the execution of the mortgage, in her opinion the defendant was insane. The testimony of this witness is, however, entitled to a fair and unbiased interpretation at our hands, and we think it plain that the witness by her answer clearly indicated that the alleged ferocity, bad temper, and loss of memory of the defendant dated from his spell of typhoid fever and had continued from that time up to the time of the trial. Insanity is a mental disease, just as typhoid fever is a physical disease, and we think that this witness, reading the question and answer to the question together, indicated that, during her acquaintance with the defendant prior to the attack of typhoid fever, the defendant was not ferocious; that he was not ill or unkind to his family; and that he possessed a memory of his business affairs. Reading the question and the answer in the same way, we are also of the opinion that this witness indicated that at all times since the attack of typhoid fever the defendant had been ill or unkind to his family; that he had possessed no memory of his business affairs; and that at different times, dating from the spell of typhoid fever and continuing, at intervals, up to the trial, the defendant was ferocious, and that these periods of ferocity sometimes lasted for two weeks. Kindness and unkindness spring from a mental attitude. Loss of memory denotes at least a decrease in mental vigor; and ferocity does not infrequently accompany certain forms of insanity.

7—184

We think it clear that Mrs. Melvin testified to sufficient facts and to a sufficiently intimate acquaintance with the defendant for her to have been permitted to testify that in her opinion when the mortgage was executed the defendant was insane. Of course her relationship to the defendant was a matter which would have gone to her credibility, but it did not affect her right to testify to her opinion or in any way affect the question as to the relevancy of her testimony.

7. Two other nonexpert witnesses were offered by the defendant on the question as to the defendant's insanity. The rules which we have above laid down with reference to the testimony of Mrs. Melvin will be a sufficient guide to the trial court, on the next trial as to the admissibility of nonexpert evidence on the question of the defendant's insanity at the time of the execution of the mortgage.

In cases like the present, much is left to the discretion of the trial court, but the evidence of Mrs. Melvin, to which we have above referred, was, as we have already said, clearly admissible, and the judgment of the trial court must be reversed because of the refusal of the trial judge to allow her to testify, upon the facts hypothesized, that her husband was when he executed the mortgage in her opinion insane.

We deem it unnecessary for the reasons above stated, to consider the question as to whether the trial court committed reversible error in refusing to allow the other nonexpert witnesses, upon the facts hypothesized by them, to testify to their opinion as to the defendant's insanity at the time referred to. As already stated, the rules above announced will furnish a sufficient guide for the trial court, on the subject under discussion, on the next trial of this case. Some authorities maintain that the question as to whether a nonexpert

shall or shall not be permitted to testify that, at a particular time, a particular person was in his opinion insane should be left to the irrevisable direction of the trial judge. This is not the rule in this state, for the rule in this state is as we have above stated it to be. —*Parrish v. State, supra; Odom v. State, supra; Pritchard v. Fowler,* 171 Ala. 662, 55 South. 147.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.