# Woods *v.* The State.

## *Murder.*

### (Decided May 14, 1914.   65 South. 342.)

1. *Evidence; Opinion Evidence.*—A physician who had examined the defendant at one time for a slight physical ailment, but who never made any examination of his mental condition, was not competent to give his opinion that the accused was sane at the time of the examination.

2. *Same; Expert; Hypothetical Question.*—An expert may give his opinion as to whether a person is sane or insane, on a proper hypothetical question which assumes the facts.

3. *Same; Opinion.*—Although not an expert, one who possesses sufficient knowledge and acquaintance with a person may give his opinion that a person is sane without giving his reasons therefor.

4. *Appeal and Error; Review; Discretion.*—Although the competency of a witness to testify to the sanity or insanity of a person rests largely for determination in the discretion of the trial court, yet where the trial court falls into such error as to amount clearly to an abuse of such discretion, the appellate court will review and reverse on account thereof.

(McClellan, J., dissents.)

APPEAL from Bibb Circuit Court.

Heard before Hon. B. M MILLER.

Randall Woods was convicted of murder and he appeals. Reversed and remanded.

FRANK M. DOMINICK and JEROME T. FULLER, for appellant. Counsel discuss the motion to quash the indictment and to strike the venire, but in view of the opinion, it is not deemed necessary to here set it out. The court was in error in permitting Dr. Nicholson to testify as to the sanity of defendant at the time of a previous examination for a slight physical ailment.—*Kroell v. State,* 36 South. 1025; *Porter v. State,* 37 South. 81; *McGhee v. State,* 59 South. 573. Counsel object to the comments of the court on defendant's given charges—

*Calloway's Case,* 39 South. 277; *Andrews v. State,* 48 South. 863; *Garth v. N. Ala. T. Co.,* 42 South. 627.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. Error in admitting the testimony of Nicholson was not such an abuse of discretion vested in the trial court as will cause it to be reviewed on appeal.—*Parrish v. State,* 139 Ala. 16; *Odom v. State,* 174 Ala. 11.

DE GRAFFENRIED, J.—The defendant was indicted for murder, and pleaded not guilty, and not guilty by reason of insanity. He was convicted by the jury, and sentenced to death.

The state, on the question of the insanity vel non of the defendant, introduced as a witness in its behalf Dr. W. J. Nicholson, who testified in substance as follows:

"That he had seen Randall Woods, the man on trial, only one time since he had been in jail. That at that time he had a conversation with him, and was called to examine him in regard to his physical condition, and he questioned him. That he asked him about his symptoms and what the trouble was, and that Randall said he had indigestion, and wanted the witness to prescribe for him. That he told him he would have to a great extent govern himself in his diet, and that Randall said that he ate corn bread and liked it. He said his meals were very heavy about his stomach. That he did not see anything unusual about him. * * * That he did not examine his mind, but only his physical condition, and that he examined him only by talking to him and asking him questions. * * * That he had only the experience with insane people of a general practitioner of the country. That during the 29 years of his experience he had seen lots of crazy people, a large number, but

could not give an idea as to the number.   *   *   *
That, as already stated, he did not make any examina-
tion of the defendant's mind. That he made an exami-
nation of his physical condition, and as to his indiges-
tion, but that that was all the examination he made of
him.   That it would be hard to give an intelligent an-
swer on the question as to whether it is not a fact that
a good many crazy people you would talk to casually
you could not tell whether they were crazy or not; in
other words, that there are so many different forms of
insanity.   That there are only a few men who can give
intelligent answers on insanity and intelligent opinions,
and that he supposes it is a fact that a great many times
you might talk with a man who was crazy and of un-
sound mind, and yet you would not detect it in ordinary
conversation."

Upon the above testimony, the court permitted the
witness to testify, over the objections of the defendant,
that, in his opinion, at the time he saw defendant in jail,
the defendant was sane.

In our opinion, the above testimony was illegal, and
should not have been admitted.   We think that it con-
clusively shows that Dr. Nicholson had never examined
the defendant with reference to his mental condition,
and that, at the only time he is shown by the evidence
to have ever seen defendant, the mind of the physician
was fixed upon the physical, and not upon the mental,
condition of defendant.   The conversation was evident-
ly short, as it related simply to a physical indisposition
of the defendant, which was not serious; and, for these
reasons, we are of the opinion that the quoted testimony
shows no such previous acquaintance with, or examina-
tion of, the defendant as would justify an opinion, by
an expert, as to the sanity vel non of the defendant.   In
1 Wharton & Stiles, Medical Jurisprudence, § 278, at-

tention is called to the unsatisfactory character of expert testimony based upon prison interviews, even when these interviews are had with the prisoner, with the view, on the part of the alienist, of ascertaining his mental condition.

"Prison interviews, in fact, are peculiarly imperfect tests, first, because there is but little possibility of observing the prisoner in unconstrained intercourse with others, and, secondly, because the observer cannot, as he could in an asylum or in places where his authority is supreme, exercise any such control over the prisoner as will enable him to apply direct tests."—1 Wharton & Stiles, Medical Jurisprudence, supra.

Certainly, if prison interviews had for the express purpose of ascertaining the mental condition of a prisoner are *peculiarly imperfect,* it would seem that a mere short interview had by a practicing physician with a prisoner, not with the view of ascertaining his mental condition, but with the sole view of prescribing for an attack of indigestion, would not only be *peculiarly imperfect,* but, standing alone, totally insufficient to support an opinion from the physician as to whether or not, at the time of such interview, the prisoner was insane.

1. We are not unmindful of the proposition that the question as to the competency of a witness to testify to the sanity or insanity of a person is left largely to the discretion of the trial court; but, while that is true, where the trial court falls into such plain error in that regard as that the error, as matter of law, amounts to a clear abuse of such discretion, a reversal will follow.— *Parrish v. State,* 139 Ala. 16, 36 South. 1012; *Odom v. State,* 174 Ala. 4, 56 South. 913; *Daniel J. Melvin v. Thomas J. Murphy,* 184 Ala. 188, 63 South. 546.

[Woods v. The State.]

We think that the evidence of Dr. Nicholson plainly shows that he had not made that examination of the defendant which the law contemplates or requires at the hands of an expert, in order that he may testify as a witness on the question of sanity vel non.—*McGee v. State,* 78 Ala. 4, 59 South. 573; *Porter v. State,* 37 South. 81; *Melvin v. Murphy, supra.*

Of course an expert, upon a proper hypothetical question propounded to him, may, assuming that the facts set up in the hypothetical question are true, answer that the prisoner is, in his opinion, sane or insane. This is not *that* case, however. In this case the expert was permitted to testify to his opinion based upon an evidently short personal examination of the prisoner which was made, not for the purpose of examining or inquiring into his mental condition, but solely for the purpose of examining into his physical condition. If the defendant had ever before been in the presence of Dr. Nicholson, or if he had ever spoken to him before that time, the evidence fails to show it.

2. There are cases which hold—and properly hold—that a witness, even though not an expert, who is shown to possess a sufficient knowledge of the prisoner to be competent to express an opinion may testify that the prisoner, in his opinion, is sane, without giving his reasons therefor.—*Dominick v. Randolph,* 124 Ala. 557, 27 South. 481; *Burney v. Torrey,* 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33.

The rules announced in the above and kindred cases have no applicability to the question now under consideration.—*Melvin v. Murphy, supra.*

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, and GARDNER, JJ., concur. McCLELLAN, J., dissents.