Kenneth Dale Wiggins was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975.
The jury found the appellant "guilty as charged in the indictment" and the trial court set sentence at ninety-nine years in the penitentiary.
On the night of Thursday, March 5, 1981, Wilma Moses was employed at the Handy Food Store in Decatur, Alabama. At approximately 10:25, Ms. Moses began making preparations to close the store for the night. As she was going outside to obtain a reading from the gasoline pumps, someone yelled "Hey" at her. (R. 51). It was a black male whom she recognized as a regular customer. The man started to run toward the door so Ms. Moses thinking he was playing a prank, pretended to hold the door closed. Then the man put a gun against the window and shot Ms. Moses in the left hand and chest.
Ms. Moses testified she got a good look at the man's face because although the man wore an open weave mesh football jersey over his head part of the time, she still could see his face. Furthermore, at one point, she saw his face without this covering. She identified the appellant in court as the man who shot her that night.
After Ms. Moses was shot, the appellant entered the store, pushed her down and said, "You better hush up or I will kill you." (R. 57). The appellant then went to the cash register and opened it. She recalled that there were at least two ten-dollar bills, two five-dollar bills, some one-dollar bills and quite a few quarters in the register at the time.
The next thing Ms. Moses remembers was when the police arrived and she was transported to the hospital.
Ms. Moses testified she picked out the appellant's photograph from a group of photographs shown to her while she was in the hospital a few days after the incident.
Donald Garth testified he purchased a .12 gauge shotgun from the appellant approximately three months before the robbery occurred. The appellant borrowed the gun from him about three weeks prior to the robbery. When Garth later asked the appellant about the gun and the robbery, the appellant said the gun was not in Decatur, Alabama. *Page 1166 
Edward Taylor of the Decatur Police Department testified he responded to a call at approximately 10:30 p.m. on March 5, 1981. When he arrived, he saw Ms. Moses lying on the floor with a shotgun wound. The cash register door was open and there was no money in it.
On March 9, 1981, Sergeant Taylor showed Ms. Moses a group of six photographs from which she picked out the appellant.
Sergeant Taylor saw the appellant at approximately 12:30 a.m., shortly after he had been arrested. He noticed the appellant smelled of alcohol so he decided not to talk to the appellant at this time because Taylor thought he might be intoxicated. The appellant was placed in a solitary cell for the night.
Sergeant Taylor next saw the appellant around 9:20 a.m., on March 10, 1981. At this point, a voir dire hearing was held to determine the voluntariness of the appellant's confession which the State sought to introduce into evidence.
Sergeant Taylor testified the appellant was read his Miranda
rights and also the waiver form. The appellant stated he understood his rights and signed the waiver of rights form. Taylor explained the charges against this appellant to him and told him he had been identified by Ms. Moses.
The appellant did not appear to be intoxicated and did not smell of alcohol at the time he gave his statement. Taylor had dealt with the appellant on other occasions and noticed that he did not seem to act abnormally.
After the appellant made his statement, Taylor read the statement to the appellant, let him read it, and gave him the opportunity to make any changes and then the appellant signed it. Taylor stated the appellant seemed to understand what was going on. He testified that no threats, coercion, hopes of reward or other inducements were made to the appellant in order to obtain this statement.
Bill Minton, a pharmacist at Lloyd's Drug Store in Decatur, testified that the use of Quaaludes could cause mental impairment and when used in conjunction with alcohol, that effect could be enhanced.
The appellant said he drank a pint of bourbon, two beers and took seven Quaaludes the evening of his arrest. He stated he remembered being arrested, going to jail and being placed in a solitary cell. He recalled that he did not sleep that night. The appellant even remembered what he had for breakfast the morning he made the statement. He recalled talking to Sergeant Taylor on that morning, reading the statement and signing it. The appellant stated he did not have an independent recollection of what happened on the night of the robbery. He admitted he could not say whether or not he shot Ms. Moses or whether or not the confession was true. He said he was high on the night of the robbery and the morning he was arrested.
The appellant's brother, Dexter Wiggins, testified he saw the appellant drink whiskey and take a Quaalude on the night of his arrest.
The trial judge found the confession was voluntarily made and then it was admitted before the jury.
The confession contained statements made by the appellant concerning where he originally obtained the shotgun, that he had sold it to Don Garth, borrowed it from him and kept it at his girlfriend's house, went to the store and shot the lady by accident because he became scared. He said he obtained $34.00 from the cash register, and later threw the gun off the river bridge.
Joe Lewis Harris and Willie Burgess testified they were with the appellant on the evening on which the robbery occurred. They had been drinking heavily, smoking marijuana, but not using pills. They did not see the appellant after 9:30 p.m.
Jessie Burgess, the appellant's girlfriend, testified that he was at her house on the night of the robbery. He left sometime between 10:00 and 10:15 p.m. and returned ten to twenty minutes later. She testified the appellant kept the gun at her house but *Page 1167 
that it was gone the morning after the robbery.
The appellant testified he drank heavily and took some Quaaludes on the night of the robbery and the night he was arrested. He recalled all the events of the night of his arrest, the morning he was questioned and even making the statements contained in the confession. However, he stated he was not admitting that he robbed and shot Ms. Moses or that he did not.
 I
The appellant contends the trial judge erred by refusing to grant defense counsel's request to hire an expert pharmacologist who could testify as to what the effects would be of the ingestion of Quaaludes on a human being.
A denial of funds to procure an expert witness does not deprive a defendant of his constitutional rights. Thigpen v.State, 372 So.2d 385 (Ala.Cr.App. 1979). However,
 "Alabama Code 1975, Section 15-12-21 (d) provides that `(c)ounsel (appointed to defend an indigent defendant) shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court, but in no individual case shall such expenses exceed one-half of the allowable attorney fees provided in this section.' (Emphasis Added.)
 "Section 15-12-21 clearly authorizes reimbursement for any expense reasonably incurred in the defense of an indigent by a court appointed attorney if such expense is approved in advance by the trial court. . . . However, such expenses must be approved by the trial court." (Emphasis added).
Bailey v. State, 421 So.2d 1364, 1367 (Ala.Cr.App. 1982).
The trial judge must find some reasonable basis for the expenditure of State funds before he may authorize such. In the judgment denying appellant's motion, the trial judge stated:
 "Counsel was advised by the Court that if there was something unusual in this phase of the case that only a pharmacologist could resolve, the Court would consider the motion. Counsel was advised that the Court thought that a local pharmacist, a medical doctor or the State Toxicologist, or even a pharmacological text book could supply credible information on this issue, since the issue was simply the effect on a human being of the ingestation of quaalude prior to the giving of a statement.
 "It was also suggested that the contention of the defendant might be reduced to writing and submitted to the State to see if it would stipulate the effect of quaalude in such circumstances. The Court advised that it was of the opinion that since this was a question to be passed on by the Court rather than by a jury, that there was no need to spend the money (counsel advised a $200.00 estimate) simply to obtain an `impressive' witness." (R. 331-332).
We hold the trial court properly considered this motion and felt the expenditure of State funds was unnecessary and improper in order to obtain the information sought from the expert pharmacologist. He determined this same information could be easily obtained through less costly methods.
Furthermore, the trial judge denied the motion on the basis that this motion was filed nearly one month after the cut-off date for the filing of such motions.
Therefore we hold that defense counsel's motion was properly denied.
 II
The appellant argues that his confession was given involuntarily and that he had been drinking, and therefore, its admission into evidence was error.
The issue of voluntariness of a confession is a question of law to be determined by the trial judge outside the presence of the jury. Snider v. State, [1982] *Page 1168 422 So.2d 807 (Ala.Cr.App. 1982), and cases cited therein.
Clearly here the State provided sufficient proof to the trial judge that the appellant's confession was voluntarily made.
Sergeant Taylor stated the appellant was not questioned on the night of his arrest because he appeared to have been drinking. The following morning when he gave his statement, the appellant exhibited no signs of intoxication. The appellant recalled every detail of the night of his arrest and the next morning and even recalled making the statements.
This court will not disturb a trial judge's decision concerning voluntariness of a confession unless it is palpably contrary to the great weight of the evidence and manifestly wrong. Morgan v. State, 363 So.2d 1013 (Ala.Cr.App. 1978),Burks v. State, 353 So.2d 539 (Ala.Cr.App. 1977). Clearly, such is not the case here.
We hold the trial judge properly admitted this confession into evidence.
For the reasons stated, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.