The appellant, Edward McCord, was indicted for the offense of sodomy in the first degree and found guilty of the lesser-included offense of attempted sodomy in the first degree. He was sentenced to ten years' imprisonment and ordered to pay $100 to the Alabama Crime Victims' Compensation Fund.
The victim's mother testified that she had been romantically involved with the appellant for several years and that, on the night in question, the appellant was spending the night at her home. She further testified that the appellant and she had been arguing and that around midnight, the appellant left the room. She remained in the bedroom, watching television, until she heard her youngest son crying. At that time, she walked into her children's bedroom and turned on the light. She then observed the appellant with his mouth between her daughter's legs and his hand on his "privacy." She testified that her daughter was ten years old and suffered from diabetes. The mother testified that her daughter was asleep and that her diabetic condition generally caused her to be a heavy sleeper. The mother thereafter left the room and walked up the street to elicit the assistance of a "sheriff" who lived nearby. On cross-examination, the victim's mother testified that the appellant had believed for some time that he was the victim of witchcraft, specifically, he believed that the witchcraft manifested itself in him through symptoms such as feelings that "something was moving in his body" and it felt "like a frog." She further testified that to break the spell the appellant had sought counselling through a woman named Lady Catherine.
Walter Crook, an investigator for the Baldwin County Sheriff's Department in the child sexual assault unit, testified that he interviewed the appellant while he was in custody in the Baldwin County Jail. He testified that before asking any questions he read the appellant his Miranda rights and that the appellant appeared to understand those rights and appeared coherent and not under the influence of alcohol or drugs. He also indicated that no inducements or threats were made. Investigator Crook testified that the appellant stated that he was under the spell of witchcraft and that he was seeing Lady Catherine concerning the spell. He also stated that another person had suggested that his problem was caused by voodooism. He stated that his mental problems were caused by the victim's mother, because he did not like the way she lived or the way she dressed. Investigator Crook further testified that the appellant accounted for his actions on the night in question as follows:
 "He [the appellant] did have his penis out and his face down on her [the victim's] vagina. He was seeing if she had been messing around with any men who had been coming around the house. He started — he stated that he took his fingers and checked her vagina out. She did not respond since most of the time she was already asleep."
The appellant further stated that on several occasions he "had checked her out" by touching her vagina and her breasts and kissing her, and that he did it for her safety to see if she had been "messed with." The appellant stated that he often had pains in his penis and the "head hurts *Page 1032 
like someone was sticking pins in it all over his penis and rectum".
At trial, the appellant testified that on the night in question, he went into the children's room in order to examine the victim. He testified that his face was about two feet away from the victim's "privacy." On cross-examination, he testified that although the lights were out, his intention was to examine the victim to tell whether she had been sexually abused. He further testified that while he was examining the victim, he exposed his penis. He stated that he did not know why he exposed his penis; however, he stated that he tried unsuccessfully to get it hard.
 I.
The appellant argues that the trial court erred to reversal by denying his petition for psychiatric examination and, further, by its failure to initiate an inquiry into his mental competence to stand trial. The record indicates that the trial court conducted a hearing on the matter before determining that the petition should be denied.
 " 'A defendant has no right to receive a mental examination whenever he [or his attorney] requests one and, absent such right, a motion for psychiatric examination to determine the competency or sanity of an accused is directed to the sound discretion of the trial judge, who must act as a screening agent for such. * * * Common sense, as well as sound legal authority, dictates that the trial judge not grant a psychiatric examination at state expense unless there is some reason to believe the accused was incompetent or insane.' Bailey v. State, 421 So.2d 1364, 1367
(Ala.Cr.App. 1982). '[I]n the absence of any evidence, the mere allegations by counsel that the accused is incompetent to stand trial do not establish "reasonable ground to doubt [defendant's] sanity" which would warrant an inquiry into his competency.' Whorton v. State, 422 So.2d 812, 813
(Ala.Cr.App. 1982)."
Whitt v. State, 461 So.2d 29, 31 (Ala.Cr.App. 1984). In determining whether the requisite doubt has been established to require a competency hearing, courts should consider the defendant's prior history, if any, of irrational behavior, the defendant's demeanor at trial, and any prior medical opinion concerning competence. Drope v. Missouri, 420 U.S. 162, 180,95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975).
As the State points out in its brief, a belief in witchcraft does not make one insane, just as belief in other faiths and religions which deal in mysticisms and rituals does not per se make one insane. Moreover, witchcraft has not been recognized in Alabama as a valid basis for an insanity defense or as a defense in its own right. Cf. Neelley v. State, 494 So.2d 669
(Ala.Cr.App. 1985) (wherein "brainwashing" was held as an improper defense in Alabama).
 "Competency to stand trial is not dependent on the level of criminal responsibility at the time of the alleged act. Rather, the focus is on the defendant's mental condition at the time of trial and on his or her ability to participate actively in the proceedings. The Supreme Court, in Dusky v. United States, [362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960], enunciated the test for determining competency to stand trial. According to the Court, the defendant must have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.' State courts must use a similar test. [See Bolius v. Wainwright, 597 F.2d 986, 988 n. 3 (5th Cir. 1979) (Dusky standard applies in state court)." La Fave and Israel, Criminal Procedure, 6.2 at 712.
It is clear upon a reading of the defendant's testimony at trial, both on direct and cross-examination, that he had a clear understanding of the charges against him and the best way to defend against them.
"The law is clear that a defendant is presumed to be sane; insanity is an affirmative defense, with the burden of proof resting at all times with the defendant. Cunningham v. State,426 So.2d 484 *Page 1033 
(Ala.Cr.App. 1982)." Westbrooks v. State, 492 So.2d 1023, 1024
(Ala.Cr.App. 1984). See also Hill v. State, 507 So.2d 554
(Ala.Cr.App. 1986).
We note that there is no problem stemming from this appellant's indigency, per Ake v. Oklahoma, 470 U.S. 68,105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), as this is not a capital case. Isom v. State, 488 So.2d 12, 13 (Ala.Cr.App. 1986).
 II.
The appellant alleges that the trial court erred to reversal by denying his motion to exclude allegedly involuntary admissions and confessions. The record indicates that following a hearing on the appellant's "Motion for Exclusion of Involuntary Admissions and Confessions," the trial court denied the motion. The appellant's argument as to the involuntariness of this statement centers wholly around his alleged insanity and incompetency at the time that he made the statement. The standard to be applied to a case in which a defendant alleges that he was mentally incompetent at the time of making his confession has been stated in cases where the defendant alleged that he was intoxicated, Moore v. State, 488 So.2d 27
(Ala.Cr.App. 1986), and in cases where the appellant alleged that he was under the influence of sedatives. Myers v. State,431 So.2d 1342 (Ala.Cr.App. 1982), cert. quashed,431 So.2d 1346 (Ala. 1983). In such a case, "it must be shown that the mind of the defendant was substantially impaired when the confession was made." Moore v. State, supra, at 30. Any mental impairment, short of mania or such impairment of the will and mind that an individual becomes unconscious of the meaning of his words, will not render a statement or confession inadmissible. The determination of whether a confession was voluntarily made is to be based upon a consideration of the "totality of the circumstances." Blackburn v. Alabama,361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). "Mental abnormality of an accused is only one factor to be considered in determining from the totality of the circumstances the voluntariness and admissibility of a confession. Corbin v. State, 412 So.2d 299
(Ala.Cr.App. 1982); Shorts v. State, 412 So.2d 830 (Ala.Cr.App. 1981)." Baker v. State, 472 So.2d 700, 703 (Ala.Cr.App. 1985).
 "When the evidence on the circumstances surrounding the appellant's confession is conflicting, the trial judge must determine its admissibility. If admitted, then the controverted testimony for the appellant goes to the jury on the confession's credibility. Where the trial judge finds on conflicting evidence that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence. Wiggins v. State, 440 So.2d 1164
(Ala.Crim.App. 1983); Raines v. State, 428 So.2d 206
(Ala.Crim.App. 1983); Snider v. State, 422 So.2d 807 (Ala.Crim.App. 1982); Harris v. State, 420 So.2d 812 (Ala.Crim.App. 1982); Hardy v. State, 409 So.2d 996 (Ala.Crim.App. 1982), Bennett v. State, 409 So.2d 936 (Ala.Crim.App. 1981), cert. denied, 457 U.S. 1137, 102 S.Ct. 2968, 73 L.Ed.2d 1356 (1982)."
Williams v. State, 456 So.2d 852, 855 (Ala.Cr.App. 1984). See, for example, Murphy v. State, 462 So.2d 761 (Ala.Cr.App. 1984) (wherein although the appellant testified that he was under the influence of drugs at the time he confessed and there was evidence that he experienced a "fit" within hours of his confession, there was conflicting evidence sufficient to support the trial court's determination that the confession was voluntary).
In the case at bar, there is no evidence that the appellant was acting in a state of mania or that his mind and will were so impaired that he was unconscious of the meaning of his words. Furthermore, there was no evidence presented of interrogation conditions which would specially affect any weakness of mind that the appellant was experiencing. SeeFikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246
(1957). Investigator Crook testified that the appellant was advised of his Miranda rights, that he appeared to understand those rights, and that he indicated that he understood those rights. He *Page 1034 
further testified that the appellant was coherent at the time and did not appear to be under the influence of any alcohol or drugs. No promises or threats were made in order to induce the confession.
In light of this evidence, we find that the trial court was correct in admitting the appellant's statement into evidence.Hold v. State, 485 So.2d 801 (Ala.Cr.App. 1986); Raines v.State, 428 So.2d 206 (Ala.Cr.App. 1983).
 III.
The appellant argues that the trial court erred to reversal by sustaining the State's objection to the testimony of Lady Catherine. Specifically, the appellant contends that because Lady Catherine was not allowed to testify as an expert witness, the jury was deprived of "relevant and material information concerning his state of mind." The appellant fails to reveal the contents of this relevant and material information.
"The determination of whether a witness is qualified to testify as an expert is largely within the sound discretion of the trial court. Charles v. State, 424 So.2d 715
(Ala.Crim.App. 1982)." Keming v. State, 470 So.2d 1343, 1347, (Ala.Cr.App. 1985).
 "The competency of a witness, whether expert or not, to give an opinion as to the sanity or insanity of a person rests largely in the discretion of the court. Woods v. State, 186 Ala. 29, 65 So. 342 (1914). Parrish v. State, 139 Ala. 16, 36 So. 1012 (1904). 'The inference of a witness as to the mental state of another is rejected where it is conceived rather than perceived.' Hembree v. State, 20 Ala. App. 181, 184, 101 So. 221 (1924). The mere fact that a lay witness has handled a great many insane persons, had observed and studied them and had read medical works on the subject, does not automatically qualify him to testify as an expert on insanity, the general rule being that only persons licensed by law to practice medicine as a profession can testify as experts on that question. Odom v. State, 174 Ala. 4, 56 So. 913
(1911)."
Carroll v. State, 370 So.2d 749, 760-61 (Ala.Cr.App.), writ denied, 370 So.2d 761 (Ala. 1979). We find no abuse of discretion by the trial court in its decision to disallow Lady Catherine's testimony as to the appellant's mental condition.
AFFIRMED.
All the Judges concur.